UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No.: 18-cr-272 (EGS) |
| v. | : | UNDER SEAL |
| AARON WILLIS, | : | |
| Defendant. | : | |

**FILED**
**OCT 11 2018**
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

### STATEMENT OF OFFENSE IN SUPPORT OF GUILTY PLEA

**I.   Summary of the Plea Agreement**

Defendant Aaron Willis agrees to admit guilt and enter a plea of guilty to Bribery, in violation of 18 U.S.C. § 201(b), which is charged by way of a one-count information. The penalty for offense of Bribery is:

(A)   a maximum term of imprisonment of 15 years;

(B)   a fine not to exceed $250,000;

(C)   a term of supervised release of not more than 3 years, after any period of incarceration; and

(D)   a special assessment of $100.

The United States Sentencing Guideline § 5E1.2 permits the Court to impose an additional fine to pay the costs of imprisonment and any term of supervised release and/or probation.

**II.   Elements of the offense of Bribery, in violation of 18 U.S.C. § 201**

The essential elements of the underlying offense of Bribery, in violation of 18 U.S.C. § 201, each of which the Government must prove beyond a reasonable doubt are:

1. The defendant was a public official, as defined in 18 U.S.C. § 201(a)(1), or a person selected to be a public official, as defined in 18 U.S.C. § 201(a)(2).

2. The defendant directly or indirectly demanded, sought, received, accepted, or agreed to receive or accept a thing of value, either personally or for another person or entity.

3. The defendant sought, accepted, or agreed to accept the thing of value in return for being influenced in the performance of an "official act," as defined in 18 U.S.C. § 201(a)(3); being influenced to commit or aid in committing or to collude in, or allow, or to make opportunity for the commission of a fraud on the United States; or being induced to do an act or omit an act in violation of his official duty.

4. The defendant acted corruptly.

### III. Statement of the Facts

1. The defendant Aaron Willis (hereinafter, the "Defendant" or "Willis") was hired by the District of Columbia Metropolitan Police Department ("MPD") in September 2005 as a customer service representative. Willis's duties as a customer representative included answering phones, assisting citizens at the front counter of a station, retrieving property and filing reports, providing copies of reports to eligible citizens, and signing for property taken into departmental custody.

2. During the course of his employment with MPD, Willis worked at the First District police station, commonly referred to as "1D."

3. On August 23, 2015, MPD began utilizing a system called COBALT. COBALT is an online electronic record management system utilized by MPD to manage reports for all incidents handled by MPD officers. Included in the types of reports accessible through the COBALT system are MPD Traffic Crash Reports, formerly labeled as a Form MPD-10 (Traffic

Accident Report), that contain information about individuals involved in traffic crashes in the District of Columbia, including their names, addresses, telephone numbers, and other identifying information.

4.     The Defendant was provided access to COBALT as part of his duties and responsibilities with MPD. In order to gain access to COBALT, the Defendant used a unique login that was assigned to him and a password that he created. At no point did Willis ever share his COBALT login and password with anyone else.

5.     Sometime prior to 2014, the Defendant met Marvin Parker ("Parker") and Michelle Cage ("Cage"). Parker and Cage both regularly came into the 1D station to obtain copies of Traffic Crash Reports on many occasions when Willis was working. Willis would assist Cage and Parker by providing them with Traffic Crash Reports from traffic crashes that occurred throughout Washington, DC, in exchange for money.

6.     On January 14, 2015, MPD issued MPD General Order No. 401.03, Traffic Crash Reports, which was distributed to all MPD employees, including Willis. In particular, MPD General Order No. 401.03 states, in relevant part, that only the following persons are permitted to view and/or obtain free copies of a PD Form 10 at a district/element or at the Public Documents Section: (1) A person involved in a crash; their spouse; or if a juvenile, their parent or guardian; the owner of the vehicle; or his or her duly authorized agent; and (2) Investigators, attorneys, and/or their staff representing a party involved in a crash.

7.     Even after the issuance of MPD General Order No. 401.03, Willis continued to provide Traffic Crash Reports to Cage and Parker in exchange for money. While at the 1D station, Willis would log in COBALT, search for Traffic Crash Reports, export the Traffic Crash Reports, and print out the reports to an MPD printer. MPD employees even complained to him about

occupying the MPD printers he used to print the Traffic Crash Reports. After a period of time, Willis purchased paper and brought it into the 1D station to use when printing Traffic Crash Reports.

8. In exchange for providing Parker and Cage copies of Traffic Crash Reports, each offered to pay Willis money. Parker paid Willis approximately $200 per week, regardless of the total amount of Traffic Crash Reports he provided. Cage paid Willis based upon the total number of reports he provided. Thus, Willis was incentivized to provide Cage with more reports than he would send to Parker. Indeed, Willis even came into the 1D station on his days off in order to download and print (and later email) reports for Cage because she was paying him based on volume.

9. Willis communicated with Cage by cell phone, number 202-609-2384. At some point in 2017, Willis decided to start emailing the reports from his personal email address, smartandsharpe25@yahoo.com, to Cage and Parker in order to avoid detection of his activities by MPD's Internal Affairs Division. On a typical work day, Willis would enter the 1D station and login to a computer. Thereafter, he would login to the COBALT application. From within the COBALT application, Willis searched for approved traffic crash reports for a specified date or date range. Once Willis pulled up the reports on the system, he would export the reports and save the file to his computer's hard drive. Finally, Willis would email the exported reports that he saved on his hard drive to Cage at her email address, michellecage98@yahoo.com, and Parker at his email address, rpminternational1@gmail.com. Sometimes, Willis received specific requests from Cage to provide her with traffic crash reports where injuries were reported. Occasionally, Cage contacted Willis to request information about specific individuals who were

involved in traffic crashes or request reports associated with a specific central complaint number ("CCN").

10. Willis kept track of the reports he sent to Cage by writing down the CCN for each report. Then, Willis would communicate with Cage and schedule a time to meet with her to receive payment for the reports he emailed to her. Sometimes Willis met Cage near her home in Fort Washington, Maryland. Other times Cage would come to Willis's home in Washington, D.C. to pay him. Yet other times, Willis and Cage would meet at a mutually convenient location. Cage always paid Willis with cash, with amount of payment ranging between $80 and $200, approximately three to five times per week.

11. Parker came to Willis's home on Sundays to pay him for the reports he provided during the previous week. As discussed, Parker paid Willis $200 per week in cash for the reports.

12. On June 7, 2017, MPD's Office of Risk Management (ORM) released Audit 2017-AUD-012; Audit of the PD Form 10-B Files (Application for a Traffic Crash Report) (the "Audit"). The Audit was conducted because MPD received information from the District of Columbia Bar's Office of Disciplinary Council of the Committee on Anti-Solicitation for the Trial Lawyers Association of Metropolitan Washington that District of Columbia lawyers, through intermediaries known as "Runners," were gaining access to MPD Traffic Crash Reports. The information from these Traffic Crash Reports was then used in an effort to solicit the people involved in the traffic crashes to become clients of the law firms within several days of the event, in violation of 22 D.C. Code Section 3225.14.

13. During the course of the Audit, MPD's ORM determined that between April 24, 2017, and May 24, 2017, Willis accessed more than 3,471 Traffic Crash Reports. A separate audit was then conducted by MPD's IAD which revealed that between June 1, 2017 and October

11, 2017, Willis accessed Traffic Crash Reports 24,781 times, and exported Traffic Crash Reports 12,206 times.

14. On October 11, 2017, members of MPD's IAD conducted a surveillance operation on Willis. At approximately 4:50 p.m., Willis arrived at the 1D station. Willis then entered the station and sat down at the front counter where he logged into an MPD computer using his login credentials. After Willis accessed the MPD system, he logged into the COBALT system where he accessed Traffic Crash Reports, exported the reports, downloaded them to the computer, and then emailed the reports to both Parker and Cage. When Willis left the 1D station, IAD members pulled over his vehicle and arrested him. At the time of his arrest, Willis was in possession of a ledger containing a list of CCNs which corresponded with Traffic Crash Reports Willis had emailed to Cage.

15. Before Willis's arrest, he attempted to delete all emails from his account that were sent to and received from Parker and Cage's emails. Willis did this to avoid leaving a paper trail related to his communications with Parker and Cage. Willis also contacted Parker and Cage and informed them that he was arrested for providing Traffic Crash Reports to them.

16. In total, between August 23, 2015, and October 11, 2017, Willis received in excess of $40,000 from Cage and Parker as payment for providing them with Traffic Crash Reports. During the entirety of this time period, Willis was a "public official" as defined in 18 U.S.C. § 201(a)(1), because he was an employee of MPD, a department of the District of Columbia government. Willis received payments from both Cage and Parker in return for being influenced in the performance of an official act in violation of his official duty, namely, accessing and providing them with Traffic Crash Reports, and in doing so Willis acted corruptly.

17. The defendant admits that the at least $40,000.00 in bribes he personally obtained

as a result of the bribery scheme described above have been dissipated by him and cannot be located upon the exercise of due diligence; have been transferred or sold to, or deposited with, a third party; and/or have been placed beyond the jurisdiction of the Court.

Respectfully submitted,

JESSIE K. LIU
United States Attorney
D.C. Bar No. 472845

By: _____

David Misler
D.C. Bar No. 991475
Assistant United States Attorney

## DEFENDANT'S ACKNOWLEDGMENT

I have read this factual proffer, understand it, and agree that it is true and accurate. While it is not a complete recitation of all that I did or all that I know, it represents some of my conduct and some of my knowledge concerning my own involvement in illegal activity as well as the activities of some of my co-conspirators. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this factual proffer fully.

Date: 10/11/2018

Aaron Willis, Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read each of the pages constituting this factual proffer, reviewed them with my client, and discussed it with my client.

Date: 11 October 2018

William Bonilla
Counsel for Defendant